Patricia BELL, Plaintiff,

v.

**FEDERAL KEMPER INSURANCE COMPANY, Defendant.**

Civ. A. No. 2:87–1302.

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 1, 1988.

Marvin W. Masters, Masters & Taylor, Charleston, W.Va., for plaintiff.

Arden J. Curry, II, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the Defendant's motion for summary judgment, and the Plaintiff's cross motion for partial summary judgment. The parties have submitted memoranda in support of their motions and the matter is mature for this Court's consideration. The issues before the Court concern matters of law and are as follows:

1. Whether the Defendant, Federal Kemper Insurance Company, is entitled to assert its subrogation claim against Plaintiff, Patricia Bell, where Plaintiff previously filed, and subsequently settled, an action against the tortfeasor and his insurance company.

2. If Federal Kemper is entitled to assert its subrogation claim, whether it is required to pay its proportionate share of Plaintiff's attorney's fee, and contribute proportionately to the expenses of litigation.

The Court, after thoroughly considering these matters, responds affirmatively to both issues raised.

## I. *Statement of Facts*

The facts surrounding the present action are virtually without dispute and are as follows:

1. That Plaintiff was involved in an automobile accident on July 24, 1983, in Greenbrier County, West Virginia, with Wayne Thomas Walton.

2. That at the time of the accident, the Plaintiff was covered by Policy No. R34003 issued by Federal Kemper Insurance Company.

3. That Plaintiff made claims against Defendant for the damage to her automobile in the amount of $3,787.75, and further made claims against Defendant for medical payment coverage in the amount of $1,486.07.

4. That Plaintiff signed a proof of loss and subrogation agreement for the automobile damage payments. There was no subrogation agreement signed with respect to the medical payments.

5. That following the accident, Plaintiff received a copy of a letter from Wausau Underwriters Insurance Company to Walton, stating that his insurance coverage was not in force at the time of the accident and that they would not be able to cover the loss.

6. That after receiving such notice from Wausau, Plaintiff retained an attorney to represent her in her claim for personal injuries resulting from the automobile accident.

7. That Plaintiff entered into an agreement with her attorney that she would bear the expenses incurred in pursuing the claim, and that the attorney fee would be one-third of the total amount recovered.

8. That in December, 1984, Plaintiff filed suit in the Circuit Court of Kanawha County, West Virginia, against Wayne Thomas Walton and Wausau Underwriters Insurance Company.

9. That in December of 1987, Plaintiff's counsel successfully negotiated a settlement with Walton and Wausau in an amount exceeding $20,000.00.[1]

10. That Plaintiff notified Defendant of the potential settlement, at which time Defendant asserted a subrogation claim in the amount of $5,273.82, for both the automobile and medical payments made to Plaintiff.

11. That because of the dispute between Plaintiff and Defendant, Plaintiff agreed to place a portion of the settlement recovery in escrow, in order to resolve her claims against Walton and Wausau.

12. That Plaintiff then filed this action in the Circuit Court of Kanawha County, West Virginia, to resolve the issue as to what amount of reimbursement, if any, Defendant is entitled to receive.

13. That on November 13, 1987, this action was removed to this Court.[2]

## II. *Discussion*

In support of its claim for reimbursement, Defendant offers the proof of loss and subrogation agreement that Plaintiff signed in consideration for the automobile damage payments. This agreement provides:

"The insured hereby assigns, transfers, and sets over to the insurer any and all claims or causes of actions of whatsoever kind and nature which the insured now has, or may hereafter have, to recover

---

1. In its motion Defendant alleges that the settlement was for $24,775.00. Plaintiff, on the other hand, contends that the settlement amount was $21,000.00. The dispute is irrelevant for the purposes of this motion, since this motion concerns the amount paid by Federal Kemper to Patricia Bell, which both parties agree to be $5,273.82.

2. Plaintiff has not objected to this Court's jurisdiction, and the Court concludes that jurisdiction is proper in this action, even though the actual amount presently in dispute is less than the $10,000.00 diversity requirement. The Court notes that Plaintiff has made vague allegations in her complaint of bad faith on the part of the Defendant. Such allegations, if established, would clearly lead to damages exceeding the jurisdictional requirement.

against any person or persons as the result of said occurrence and loss above described, to the extent of the payment above made; the insured agrees that the insurer may enforce the same in such manner as shall be necessary or appropriate for the use and benefit of the insurer, either in its own name or in the name of the insured; that the insured will furnish such papers, information, or evidence as shall be within the insured's possession or control for the purpose of enforcing such claim, demand, or cause of action; and ..."

Plaintiff challenges Defendant's right to subrogation on two grounds: (1) that Plaintiff did not specifically grant Defendant a right of subrogation with respect to the medical payments, and (2) that Plaintiff was not fully compensated for her injuries by the amount of the settlement recovery. Each of Plaintiff's arguments will be addressed separately.

Prior to discussing these arguments, the Court notes that Plaintiff has made no argument as to why the aforementioned subrogation provision should not be applied with respect to the amount paid to Plaintiff for property damage. Rather, Plaintiff's argument focuses upon Defendant's right to recover medical payments made to the Plaintiff as a result of the accident.

■ The Court, after considering this matter, is satisfied that Plaintiff could not make a meritorious argument regarding the property damage payment. The language contained in the subrogation agreement, signed by Plaintiff, is clear and unambiguous in this respect. Accordingly, the Court concludes that Defendant is entitled to assert its subrogation claim against the Plaintiff to the extent of the property damages paid.

■ With regard to Defendant's ability to assert its subrogation claim for medical payments, the Court notes that the West Virginia Supreme Court of Appeals has recognized the validity of subrogation agreements for medical payments. *Travelers Indemnity Co. v. Rader*, 152 W.Va. 699, 166 S.E.2d 157 (1969). Plaintiff, however, attempts to distinguish *Travelers*

from the present case on the basis that Plaintiff herein has signed no document, after receipt of medical payment, specifically granting the right of subrogation to the Defendant. Absent such agreement, Plaintiff contends that Defendant has no right to reimbursement for the money paid under the medical payment provision of the policy.

Defendant, on the other hand, argues that the general provision of the policy, entered into by the parties, entitles it to subrogation regardless of whether a separate subrogation agreement was executed. Part VI of the general provisions of the policy, paragraph 5, provides:

"A If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss to prejudice them.

B If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment."

Considering this language, the Court determines that the Defendant has adequately preserved its right to subrogation via the general provisions of the policy. Accordingly, the Court concludes that Defendant is entitled to assert its subrogation claim for medical payments, in the absence of specific authorization beyond that contained in the general provisions of the policy.

■ Plaintiff makes an additional challenge to Defendant's right to subrogation for medical payments on the ground that Plaintiff has not been fully compensated for the injury she suffered. Plaintiff has submitted an affidavit to this effect, dated July 14, 1988, which provides in paragraph 8:

"Although the $1,486.07 in medical payments and $3,787.75 in property damage paid by Federal Kemper was included as part of my claim for damages, my total recovery did not fully and completely compensate me for all the injuries and damages. I settled the case to avoid a trial and the uncertainty of a trial. Out of the settlement I was required to pay a one-third contingency fee."

Plaintiff contends that Defendant can recover only the excess that Plaintiff has received from the wrongdoer remaining after Plaintiff has been fully compensated for her loss. *United Pacific Ins. Co. v. Boyd*, 34 Wash.App. 372, 661 P.2d 987 (1983). A close reading of the *Boyd* decision, however, reveals that its ruling does not support Plaintiff's position.

In *Boyd* the defendant was injured in an automobile accident and received payments from his insurance company for lost earnings and for medical expenses. Subsequent to the payments, defendant filed suit against the tortfeasor responsible for his injuries seeking recovery of, among other things, lost earnings and medical expenses. The action proceeded to trial and the jury awarded defendant a verdict exceeding the amount of payments received by the insurance company. At this point, the insurance company attempted to intervene to assert its subrogation rights. The insurance company's motion was denied, and it commenced a separate action to recover its subrogation interest.

The matter came before the court on motion for summary judgment. The defendant contended that a material fact existed as to whether he was made "whole" by the jury verdict. Defense counsel filed an affidavit in support of defendant's position, stating that the total verdict did not equal defendant's proof as to his lost wages resulting from the underlying automobile collision.

The court held that defendant was collaterally estopped from denying that he was made whole by the jury verdict. In doing so, the court noted that "the jury determined the money necessary to make (the defendant) 'whole'. The fact [that defend-

ant] has placed a greater value on his damage than the jury did does not allow him to relitigate the issue in a subsequent proceeding." 661 P.2d at 990.

Although the underlying action between Defendant and the tortfeasor did not proceed to a jury verdict in the present case, the Court is satisfied that the logic contained in the *Boyd* decision should apply to this situation as well. The Court concludes that the amount of Plaintiff's damages was fully fixed by the settlement agreement, entered into between the Plaintiff and the tortfeasor. The Court assumes, and Plaintiff has offered no evidence to the contrary, that the negotiations in the underlying action were conducted in an arm's length manner, and that Plaintiff willingly entered into the settlement agreement. The action was dismissed with prejudice. Therefore, after reaching settlement, the Plaintiff is precluded from arguing that she was not fully compensated. Accordingly, the Court concludes that Defendant may assert its subrogation claim for medical payments against the Plaintiff to the extent of payments previously made.

 The Court now turns to the issue of whether the Defendant is required to pay its proportionate share of attorney's fees and contribute proportionately to the expenses of litigation. Counsel for the Plaintiff contends that it is unfair for his clients to pay a contingent fee on the settlement amount when, of this amount $5,273.82 has been claimed for the benefit of the Defendant. Plaintiff further contends that she is entitled to reimbursement of the Defendant's pro rata share of attorney's fees and expenses incurred in prosecuting her claim.

The Defendant contends that the contract between Plaintiff and Defendant requires her to reimburse Defendant for the full amount paid under the policy without deduction for fees or costs.

The Court notes that there is a significant amount of authority which indicates that the insured's attorney is entitled to a fee out of the insurer's share of recovery from the tortfeasor. *See generally* Annot., 2 A.L.R.3d 91. This case, however, differs in some respects from the cases discussed

in the annotation, in that Plaintiff's attorney has not requested the fees for himself. Rather, the argument is that Plaintiff is entitled to have the subrogated amount reduced by Defendant's proportionate share of attorney's fees and expenses.

Plaintiff has cited many cases in support of her position, many of which address the issue of whether the insured's attorney is entitled to recover his or her fees. However, the case of *Klacik v. Kovacs*, 111 N.J.Super. 307, 268 A.2d 305 (1970) appears to address the present issue at bar. In *Klacik*, the plaintiff was involved in an automobile accident in which she was injured. Under the terms of the policy, plaintiff was entitled to reimbursement from her insurance company for medical and dental expenses not exceeding $1,000.00. Plaintiff received $973.00 under this provision of the policy. After receipt of payment, plaintiff instituted a personal injury action against the tortfeasor, which resulted in a settlement for $33,000.00. After settlement, the issue arose as to the proper disbursement of the settlement amount. The trial court held that the insurance company was entitled to the entire $973.00 paid under the policy.

On appeal, the court observed that neither the policy nor any other agreement granted plaintiff's attorneys the right to an attorney fee or costs out of the funds payable under the subrogation provision. However, the court adopted the view expressed in *United Services Automobile Ass'n v. Hills*, 172 Neb. 128, 109 N.W.2d 174 (1961). The Nebraska court stated:

> "where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees."

109 N.W.2d at 177. In adopting the view espoused by the Nebraska court, the *Klacik* court reasoned:

> "Clearly had Home [Insurance Company] decided to institute its own action, or intervene in the action instituted by plaintiffs against Kovacks, it would have been required to incur expenses including an attorney's fee for such action. To establish an artificial rule which would provide an insurer with the right to sit back and permit its insured to proceed with an action, expecting to share in the avails of that proceeding without the burden of any expense, occurs to us to be anomalous."

268 A.2d at 308.

The court went on to reduce the insurance company's recovery under the subrogation provision by the one-third contingency agreement that plaintiff had arranged with counsel.

The facts in the present case are similar to those in *Klacik* in that the correspondence between Plaintiff's counsel and Defendant indicates that Defendant was aware of Plaintiff's retention of counsel and subsequent action against the tortfeasor. Additionally, the Court is aware of no evidence which would indicate that Defendant instructed or notified the Plaintiff or her counsel not to pursue their portion of the claim against the tortfeasor or his insurer. Further, there is no evidence that Defendant offered to make itself a party to the action against the tortfeasor or to in any manner assist in the prosecution of the claim or contribute towards the expense thereof. Rather, it is apparent to the Court that Defendant simply acquiesced in Plaintiff's proceedings against the tortfeasor.

Given the state of the facts the Court believes that the *Klacik* court's reasoning should apply to this situation as well. Accordingly, the Court holds that absent agreement to the contrary, the Plaintiff is entitled to reduce the amount paid to the Defendant by the Defendant's proportionate share of attorney's fees and expenses.

■ In determining the amount of Plaintiff's reductions, the Court finds that the one-third fee arrangement entered into between Plaintiff and her counsel is reasonable. Additionally, the Court finds that it would not be unduly burdensome to impose this fee arrangement on the Defendant. Therefore, Defendant's reimbursement

shall be reduced by one-third for attorney fees.

■ With regard to litigation expenses, the Court concludes that Defendant must share in its proportionate share of reasonable litigation expenses.

### III. *Conclusion*

For the reasons set forth above, the Court rules as follows on the Defendant's motion for summary judgment and the Plaintiff's cross motion for summary judgment:

1. Grants the Defendant's motion for summary judgment entitling it to assert its subrogation claim with regard to property damage.

2. Grants Defendant's motion for summary judgment entitling it to assert its subrogation claim with regard to medical payments.

3. Grants Plaintiff's cross motion for partial summary judgment which entitles her to reduce the amount paid to Defendant by Defendant's proportionate amount of reasonable attorney's fees and expenses.